UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH Y. CHUNG,<br><br>    Plaintiff,<br><br>    v.<br><br>CHUNG PENG CHIH-MEI, et al.,<br><br>    Defendants. | Case No. 22-cv-01983-PCP<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND DENYING PLAINTIFF'S MOTIONS TO SEAL IN PART**<br><br>Re: Dkt. Nos. 74, 76, 84, 88 |

Defendants Chung Peng Chih-Mei and Intertrust (Bahamas) Limited move to dismiss plaintiff Elizabeth Chung's amended complaint. Because the Court lacks personal jurisdiction over either defendant, the Court grants their Rule 12(b)(2) motions.

**BACKGROUND**

Chung, a California citizen, filed this lawsuit against her mother-in-law Chih-Mei and Intertrust in March 2022, alleging that Chih-Mei has implemented what she calls a "mother's trust gambit" with Chung's estranged husband David Chung. Dkt. No. 66, at 2. Specifically, Chung alleges that in 2004 David Chung sought to avoid U.S. taxes by transferring approximately $5 million in marital assets to a trust owned by Chih-Mei, a Chinese citizen residing in Taiwan, and that Chih-Mei is therefore not the rightful owner of those assets. Chung alleges that Intertrust was responsible for creating two additional trusts with those assets, Bend Family Trust I and Nichodon Family Trust, to perpetrate the alleged gambit. *Id.* at 3. The trusts were formed under Bahamas law between Intertrust and Chih-Mei as the settlor (while she was in Taiwan), and David Chung was appointed as the advisor of the trusts while he was residing in California. *Id.* at 4. Chung alleges that Bend Family Trust I assets were invested into TenX Capital Limited, which fully owns WTI, a California corporation. *Id.* at 10–11. Chung requests declaratory and injunctive relief stating that

Chih-Mei does not own any "genuine right, title, or interest in, or the right to control" the assets purportedly controlled by the trusts in her name. *Id.* at 24.

In September 2022, Intertrust moved to dismiss Chung's complaint for lack of personal jurisdiction under Rule 12(b)(2), Dkt. No. 20, and Chung subsequently requested jurisdictional discovery, Dkt. No. 49. In February 2023, the Court granted Intertrust's motion with leave to amend and granted in part Chung's request. Dkt. No. 61. The Court reasoned that Chung had failed to establish that the Bend Family Trust I holds any assets in WTI and had improperly attributed to Intertrust Chih-Mei's role in selecting her California-based son David Chung as an advisor to the trusts. *Id.* at 6. The Court also noted that Chung's claims stem from the creation of the initial trust in 2004, and thus are "in no way related to investment decisions or other actions that David Chung may have taken in his role as a supposed agent." *Id.* Granting Chung's request for jurisdictional discovery in part, the Court permitted Chung to conduct a three-hour deposition of Intertrust and to serve three interrogatories and two document requests. *Id.* at 7.

Chung thereafter filed an amended complaint, Dkt. No. 66, and both Chih-Mei and Intertrust have moved once again to dismiss Chung's complaint for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the Court agrees that it lacks personal jurisdiction over either Chih-Mei or Intertrust, it need not address the other grounds for dismissal.

Chung also filed two administrative motions to seal in connection with her briefs opposing Intertrust's and Chih-Mei's motions to dismiss. Dkt. Nos. 84, 88. Chung requests to seal Exhibits I, L, M, N, O, P, R, and S to her opposition to Intertrust's motion, and Exhibits B, C, L, O, P, V, W, X, Z, and AA to her opposition to Chih-Mei's motion. She argues that these exhibits were designated confidential by Intertrust pursuant to a Stipulated Protective Order. Dkt. No. 65. Intertrust largely supports the two administrative motions, requesting to seal Exhibits L, M, N, O, P, and S to the first opposition, Dkt. No. 84, and Exhibits O, P, V, W, X, and AA to the second, Dkt. No. 88. Intertrust contends that these exhibits contain sensitive financial information.

**STANDARD OF REVIEW**

In opposing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff has the burden to prove that the Court's exercise of personal jurisdiction over the moving defendant is appropriate. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). On such a motion, the Court can consider evidence contained in affidavits and is not limited to the allegations of the plaintiff's complaint. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

Federal Rule 4(k)(1)(A) provides that in the absence of a federal statute governing personal jurisdiction, "the district court applies that law of the state in which the district court sits." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Since "California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Id.* at 800–01.

In order for a court to exercise personal jurisdiction over a particular defendant, due process requires that the defendant have "minimum contacts" with the chosen forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The "minimum contacts" required by due process depend upon whether a court is exercising general or specific jurisdiction. General jurisdiction extends to all claims that might be asserted against a defendant, and thus requires a substantial degree of contact with the forum. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). "A court may assert general jurisdiction over foreign … corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* at 919. For corporations, therefore, the "paradigm" bases for general jurisdiction are "the place of incorporation and principal place of business," although operations in another state might also be "so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 137, 139 n.19 (2014).

Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017,

3

1024 (2021). For a court to have specific personal jurisdiction, the defendant "must take some act by which it purposefully avails itself of the privilege of conducting activities" in the forum state, and the claims "must arise out of or relate to the defendant's contacts with the forum." *Id.* at 1024–25 (cleaned up).

There is a "strong presumption in favor of access" to court records. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). A party who wishes to seal a court record "must articulate compelling reasons supported by specific factual findings … that outweigh the general history of access and the public policies favoring disclosure." *Id.* at 1178–79 (cleaned up). "Under this stringent standard," the Court must "conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096–97 (9th Cir. 2016). Under this District's Civil Local Rule 79-5(c)(1), the party seeking to seal must provide "a specific statement" of the reasons for doing so, explaining the interests that warrant sealing and the injury that will otherwise result.

**ANALYSIS**

**I.     The Court Lacks Personal Jurisdiction Over Chih-Mei.**

Chih-Mei is a Chinese citizen and Taiwanese resident, and thus is not subject to general personal jurisdiction in this forum. Chih-Mei contends that she also is not subject to specific personal jurisdiction in California because she has not purposefully availed herself of the privilege of conducting activities here and has only traveled to the state one time to visit family. Dkt. No. 74, at 15. In response, Chung argues that Chih-Mei is subject to specific personal jurisdiction in this forum because she appointed her California-residing son David Chung to be the advisor of her trusts and because Bend Family Trust I invested $16 million in TenX Capital Limited, which in turn owns 100% of the California corporation WTI. Dkt. No. 87, at 17–20. Chih-Mei counters that the trusts were formed under Bahamas law and that TenX is in fact a Cayman Islands company.

To comport with due process, Chung must establish not only that Chih-Mei purposefully availed herself of the privilege of conducting activities in California but also that her claims arise out of or relate to those contacts with California. Chung's effort to assert personal jurisdiction over Chih-Mei in this Court fails under the second requirement. Whether or not the presence of a

4

California-based advisor to Chih-Mei's trusts or the trusts' investment in a non-American company that happens to own a California corporation could establish that Chih-Mei has purposefully availed herself of California, Chung has not established that her claims in this case arise out of or relate to these contacts. All of Chung's claims in this case are premised on the circumstances surrounding the creation of the *initial* trust in 2004 whereby Chung's assets were allegedly first unlawfully transferred to Chih-Mei, not to David Chung's later purported investment decisions as an advisor or to the trust's investment in TenX 12 years after the creation of the initial trust.

Chung responds that "[w]ithout the acquisition of the TenX shares directed by David, there would be no dispute about their ownership." Dkt. No. 87, at 21. Chung seems to argue that she would not have approved of those investment decisions had she retained control of the assets at issue, and that she therefore suffered harm in California sufficient to support this Court's exercise of personal jurisdiction. But the 2016 transaction through which the trust acquired the TenX shares is not the legal basis for Chung's claims for declaratory and injunctive relief. Indeed, her claims in this case would be exactly the same had TenX not owned a California company or had David Chung never resided in California. For that reason, Chung's claims involving the 2004 transfer of marital assets cannot be said to arise out of or relate to Chih-Mei's alleged contacts with California many years later for the purposes of due process, and thus cannot be pursued against her under a theory of specific personal jurisdiction.

## II. The Court Lacks Personal Jurisdiction Over Intertrust.

Intertrust is a company based in the Bahamas, and Chung has not presented evidence demonstrating that Intertrust's contacts with California are so "continuous and systematic" to render it "at home" in the state. The Court therefore cannot exercise general personal jurisdiction over Intertrust.

With respect to specific personal jurisdiction, Intertrust's argument for dismissal is even stronger than Chih-Mei's. As noted in a prior order of this Court, it was Chih-Mei and not Intertrust who appointed David Chung to be the advisor of the trusts. Dkt. No. 61, at 6. Similarly, the investment in TenX Capital Limited cannot be attributed to Intertrust. As Chung herself

concedes, "[t]here is no reason to believe that Intertrust ever directed an investment decision, or played a meaningful role in the management of the assets that are said to have been acquired for the trusts." Dkt. No. 87, at 20. She further notes that, "[f]rom the beginning, Intertrust simply took instruction as David Chung planned the TenX investment," and did not exercise "any judgment or control over the process." Dkt. No. 82, at 11–12. Accordingly, Chung has not provided evidence that her claims arise from any way in which Intertrust purposefully availed itself of the privilege of conducting business activities in California.

### III. The Court Denies Chung's Administrative Motions To Seal in Part.

Chung also moves to seal various exhibits attached to her briefs opposing Intertrust's and Chih-Mei's motions to dismiss. Intertrust largely supports Chung's motions to seal, arguing that the exhibits contain sensitive personally identifiable financial information.[1] Exhibits L, M, N, O, P, and S to Chung's brief opposing Intertrust's motion to dismiss are identical to Exhibits O, P, V, W, X, and AA to Chung's brief opposing Chih-Mei's motion to dismiss. Exhibits L and M to the first opposition (corresponding to Exhibits O and P to the second) contain information about the identity and address of David Chung as advisor to Chih-Mei's trusts. Exhibits N, O, P, and S to the first opposition (corresponding to Exhibits V, W, X, and AA to the second) contain private email chains describing purportedly sensitive financial transactions.

Chung and Intertrust have not provided "compelling reasons" outweighing the "strong presumption in favor of access" to court records. *Kamakana*, 447 F.3d at 1178. The first two exhibits reveal David Chung's California home address in 2012, when he became advisor to Chih-Mei's trusts. This information alone does not make the exhibits "a vehicle for improper purposes, such as … to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179. As to the latter four exhibits, much of the purportedly confidential information contained therein is referenced in Chung's complaint on the Court's public docket.

---

[1] Chung moves to seal various exhibits attached to her opposition briefs because she believes these exhibits were designated confidential by Intertrust in a protective order. Because Intertrust does not support Chung's motions to seal Exhibits I and R to her first opposition, Dkt. No. 84, or Exhibits B, C, L, and Z to her second opposition, Dkt. No. 88, the Court denies the motions to seal these six exhibits without further consideration and orders Chung to file those exhibits on the public docket within 7 days of the date of this Order.

6

For example, Exhibit O to the first opposition (corresponding to Exhibit W to the second) reveals that David Chung invested approximately $16 million of Bend Family Trust I assets into TenX Capital, but this information is publicly available in Chung's complaint. Dkt. No. 66, at 9.

In short, the parties have failed to provide a "specific statement" justifying the sealing of these records as required by the Local Rules to meet the Ninth Circuit's "stringent standard" for sealing these exhibits from the public.

The Court notes, however, that Exhibit O to the first opposition (corresponding to Exhibit W to the second) appears to contain a financial account number in the top left corner of the box in the middle of the page. Federal Rule 5.2(a)(4) requires the redaction of all but the last four digits of any financial-account number. For that reason, the motions to seal are granted only with respect to the financial-account number included in Exhibit O to the opposition to Intertrust's motion and Exhibit W to the opposition to Chih-Mei's motion.

## CONCLUSION

For the foregoing reasons, the Court grants Chih-Mei's and Intertrust's Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction. The Court also denies in part Chung's administrative motions to seal. Within 7 days of this Order, Chung shall file each of the exhibits that were the subject of her administrative motions to seal on the public docket, but in doing so shall redact all but the last four digits of the financial-account number included in Exhibit O to the opposition to Intertrust's motion and Exhibit W to the opposition to Chih-Mei's motion. Because there are no other defendants in this case, the Court dismisses the action and orders the Clerk to close the file.

**IT IS SO ORDERED.**

Dated: January 31, 2024

P. Casey Pitts
United States District Judge